## LASBURY v. SCARPULLA.

(Supreme Court, Appellate Term, First Department. January 7, 1916.)

1. VENDOR AND PURCHASER ⬳31—PERFORMANCE—VENDOR'S TITLE—MISTAKE IN DESCRIPTION.

Where a vendor contracted to sell property described by lot and block number as designated on map No. 1169 filed in the office of the county clerk, but it appeared that there was no map of that number, but that a map numbered 1168 contained the description set out in the contract, and that the vendor had title to such premises by deed on record containing the same description as that in the contract but correctly stating the number of the map, the misdescription of the map in the contract was inadvertent and immaterial, and, as the vendor could give a record title of the premises which were purchased, the purchaser could not rescind on that ground.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 35–37; Dec. Dig. ⬳31.]

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. VENDOR AND PURCHASER ⟪⟫32—ACTION TO RESCIND—FRAUDULENT REPRE-
SENTATION.

A purchaser's action to rescind a contract for the vendor's false and
fraudulent representation that a first mortgage on the premises would not
be due for five years, when in fact it had only two years to run, in which
the vendor's agent admitted his representation that it would be taken
care of, in view of the fact that under the contract the purchaser was not
to obtain title until after five years, was maintainable, as the purchaser
might have refused to pay down $400 and to agree to $15 per month for
over five years without the assurance that the first mortgage could not
be foreclosed for five years.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§
38–60, 66; Dec. Dig. ⟪⟫32.]

3. VENDOR AND PURCHASER ⟪⟫45—ACTION TO RESCIND—QUESTION FOR JURY.

In such case, the question whether the purchaser actually relied upon
such representation was one of fact for the trial justice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§
77, 78; Dec. Dig. ⟪⟫45.]

4. VENDOR AND PURCHASER ⟪⟫123—ACTION TO RESCIND—RESCISSION—EVI-
DENCE.

In a purchaser's action for the return of money paid upon a rescission
of the contract, as to which the complaint was silent, testimony of plain-
tiff that when she learned that a mortgage did not run for five years as
represented by the vendor, she made no further payments on the contract,
not showing that she gave up any benefits under the contract by way of
rents, or offered to return the surplus of the rent over the payments
due the vendor, and affirmatively showing that she thereafter collected
rents, did not establish her rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§
221–227; Dec. Dig. ⟪⟫123.]

Appeal from Municipal Court of City of New York.

Action by Alice Lasbury against Balldassare Scarpulla. From a
judgment in favor of plaintiff and against the defendant, and from
an order amending the judgment, defendant appeals. Reversed, and
new trial ordered.

Argued November term, 1915, before LEHMAN, BIJUR, and
FINCH, JJ.

Samuel Perlo, of New York City, for appellant.

Moses D. Moss, of New York City, for respondent.

LEHMAN, J. The plaintiff in August, 1914, entered into a con-
tract to purchase certain premises belonging to the defendant. The
purchase price was $4,400, but under the contract the plaintiff was
required to take the property subject to a first mortgage in the sum
of $2,500. The remainder of the purchase price, viz., $1,900, was to
be paid as follows: $400 on the signing of the contract, and $1,500
in monthly payments of $15, together with interest on the unpaid
balance. The deed was to be delivered only after the plaintiff had
paid the sum of $1,400, and the purchaser was then to take title sub-
ject to the said first mortgage of $2,500, and subject to a second
mortgage for $500, the balance of the purchase money, which was to
be paid at the same rate of $15 per month, together with interest at
6 per cent. It consequently appears that the plaintiff was to obtain

title after the expiration of almost six years. The purchaser was, however, entitled to possession from September 1, 1914.

The plaintiff paid the sum of $400 on the signing of the contract, and apparently went into possession of the premises. For some months the agent of the defendant in the making of the contract acted as plaintiff's agent in the collection of the rents and transmitted to her the balance of the rents after deducting the monthly payments of $15 and interest. After January 1st, the plaintiff paid nothing to the defendant and failed to pay the interest on the first mortgage due in that month, but she did collect the rents for February, March, and April, amounting to $18 for one month and $17 for the succeeding two months. Thereafter she brought this action to recover from the defendant the sum of $500 on the ground that the defendant through his agent had induced her to enter into this contract by fraudulent misrepresentations.

The complaint sets forth two causes of action. The first cause of action sets forth: That the plaintiff entered into a contract whereby the defendant agreed to sell her certain premises "designed by the lot No. 627 in block No. 15 on a map entitled Luona Park, Corona, L. I., property of Edmund L. Baylies, Esq., map No. 1 of 1,067 lots surveyed March, 1893, by G. A. Roullier, Flushing, N. Y., and filed in the offices of the clerk of the county of Queens, N. Y., on the 18th day of May, 1893, on map No. 1169." That the defendant fraudulently represented that he was the owner of these premises and the plaintiff, relying on said representations, paid to defendant the sum of $400, and thereafter paid him the further sum of $100. That defendant was not the owner of said premises and has not acquired title thereto.

The second cause of action sets forth that the defendant falsely and fraudulently represented that the first mortgage of $2,500 would not be due and payable until August 19, 1918; that this representation was false and untrue; and that plaintiff relied upon it.

[1] At the trial plaintiff showed that the contract described the property by lot and block number as designated on a map entitled "Luona Park, Corona, L. I., property of Edmund L. Baylies, Esq., map No. 1 of 1,067 lots surveyed March, 1893, by G. A. Roullier, Flushing, N. Y., and filed in the office of the clerk of the county of Queens, N. Y., on the 18th day of May, 1893, as map No. 1169." She further showed that there was no map as described in the contract filed as map No. 1169, but she also showed that a map exactly that description was filed on May 18, 1893, as map No. 1168. It is undisputed that the plaintiff and the defendant both understood exactly what premises were covered by the contract. It is further undisputed that the defendant has title to these premises by deed on record, and that this deed describes the premises exactly as they are described in the contract, except that the map is there correctly stated to be map No. 1168. Under these circumstances, it is perfectly clear that the misdescription of the map in the contract was not only inadvertent, but immaterial. The defendant can give a perfect record title of the very premises which the plaintiff bought, and that is all

that plaintiff is interested in. The first cause of action should therefore have been dismissed.

[2] The plaintiff, to sustain her second cause of action, gave evidence that the defendant's agent represented that the first mortgage had five years to run, and it is conceded that the mortgage had in fact only two years to run. The defendant's agent denied having made any representation in regard to the mortgage except that it would be taken care of. Inasmuch as the plaintiff was to obtain title only after the five years had expired, the defendant now urges that any representation that the mortgage had five years to run was immaterial and could not have been relied upon by the plaintiff, for the plaintiff knew that in any event she was bound to take the premises only subject to a $2,500 first mortgage, and that the defendant was bound to see, either that the mortgage would be extended, or take back a first mortgage for that amount himself. In this contention I cannot agree. It is quite conceivable that the plaintiff might have refused to pay down $400, and to agree to pay $15 a month for over five years, without the assurance that the first mortgage could not be foreclosed and thus wipe out her equity for five years.

[3] The question of whether or not the plaintiff did actually rely upon this representation was one of fact for the trial justice, and, if the trial justice has made such a finding,. I do not think we could disturb it even if we should be inclined to the opposite view. It is unnecessary now to consider whether in fact the trial justice did make such a finding, or whether he based his judgment on the misdescription of the map in the contract; for in either event the judgment must be reversed.

[4] The action is not for damages for fraud upon the affirmance of the contract, but is for the return of moneys paid upon a rescission of the contract, and judgment can be sustained only if there is sufficient proof to show a rescission. The complaint is silent as to such a rescission, and the only evidence which I can find in the case as to a rescission is the testimony of the plaintiff that some time in January she learned that the mortgage did not run until August, 1918, and thereupon she made no further payments on the contract. A rescission is, of course, not proven by evidence that the plaintiff gave up the burden of the contract if it does not also appear that she gave up the benefit. In this case it not only does not appear that the plaintiff, after she learned of the alleged misrepresentations, ever offered to return the surplus of the rent over the payments due which she received prior to January, but it affirmatively appears that even after that time she for three months collected the rent though failing to pay under the contract. Instead of a recission, the evidence rather tends therefore to show an affirmance, and, though the plaintiff has obtained a judgment for the amount paid under the contract, she is apparently still retaining the amount she has received thereunder.

Judgment reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.